UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KEITH NEWBORN,

                Petitioner,

         -against-

JOSEPH T. SMITH,

                Respondent.
------------------------------------------------------------X

**OPINION AND ORDER**
09-CV-4844(SJF)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ FEB 07 2013 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

      Petitioner Keith Newborn ("petitioner"), proceeding pro se, has filed the instant petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Docket Entry No. 1] (the "Petition"). On October 14, 2004, a judgment of conviction was entered against petitioner in the County Court of the State of New York, Suffolk County, upon a jury verdict finding him guilty of one (1) count of sodomy in the first degree and one (1) count of sexual abuse in the first degree. Following his conviction, petitioner was sentenced as a persistent violent felony offender, based upon two (2) prior convictions for sexual abuse in the first degree, to two (2) concurrent indeterminate terms of incarceration of twenty-five (25) years to life and fifteen (15) years to life. [Docket Entry No. 11] at ¶ 3. For the reasons that follow, the Petition is denied.

I.     Background

    A.     Trial

      The victim, N.G., testified that on December 6, 2001 she was walking to the train station in Huntington, New York when a man offered her a ride. Trial Transcript ("T.") at 180-81. She refused, and the man "grabbed [her] arm very hard" and "put [her] in his car." T. 181. After

1

driving to another location in Huntington, the man stopped the car and said, "I want you to do me a favor." T. 182. N.G. said, "Don't hurt me," and offered the man money, but he refused and said that if she "didn't do what he asked he would do much more." T. 183. The man "started licking [her] breasts" and "forced [her] head onto his penis in [her] mouth." T. 183. After he ejaculated, the man drove the car up a hill toward a construction site. T. 183. When the car stalled, N.G. got out of the car and ran toward a group of construction workers. T. 183-84. N.G. told a Spanish-speaking construction worker that she was assaulted, and a supervisor at the construction site then drove N.G. to her place of work, as she requested. T. 184-86. When N.G. arrived at work, she told her manager about the assault, and the manager called the police. T. 186. N.G. identified petitioner as her attacker. T. 185.[1]

Petitioner testified that his interaction with N.G. was consensual. According to petitioner, he owned a construction business and was in Huntington on December 6, 2001 looking for laborers. T. 323-24. When petitioner saw N.G. walking nearby, he asked her where she was going and offered her a ride. T. 324. N.G. accepted and voluntarily entered petitioner's car. T. 324. While driving, N.G. and petitioner discussed problems that N.G. was having with her boyfriend, and petitioner gave her two hundred dollars ($200.00) to help her move out of the house she shared with her boyfriend. T. 326-30. N.G. started to cry, and petitioner began massaging her back. T. 330-31. N.G. then massaged petitioner's crotch and performed oral sex on him. T. 331-32. Afterward, petitioner and N.G. argued over the proper route to take to N.G.'s place of work, and N.G. decided to get out of the car and walk the rest of the way. T. 333-35.

---

[1] As discussed in further detail below, the construction worker, the supervisor at the construction site, and N.G.'s manager also testified at the trial.

2

B.  Appeal

Petitioner appealed from his judgment of conviction to the Appellate Division of the Supreme Court of the State of New York, Second Department, on the grounds that he was denied his right: (1) to a speedy trial provided by § 30.30 of the New York Criminal Procedure Law (the "CPL"); (2) to a fair trial because the trial court (a) "allowed the introduction of several outcry witnesses" and (b) "refused [petitioner's] request to charge sexual abuse in the third degree as a lesser included offense of sexual abuse in the first degree"; and (3) to be free from unreasonable searches and seizures under the Fourth Amendment. Petition at 2. By order dated July 17, 2007, the Appellate Division affirmed petitioner's conviction, holding that (1) "[t]he County Court properly denied [petitioner's] speedy trial motion," and (2) petitioner's "remaining contentions [were] without merit or [did] not require reversal." People v. Newborn, 42 A.D.3d 506, 507-08, 840 N.Y.S. 2d 609 (N.Y. App. Div. 2007). Petitioner presented the same claims to the New York Court of Appeals, which denied leave to appeal on July 21, 2008. People v. Newborn, 10 N.Y.3d 962, 863 N.Y.S.2d 146 (N.Y. 2008).

On October 22, 2009, petitioner filed the instant petition alleging (1) that he was denied his constitutional right to a speedy trial, and (2) that he was denied his right to a fair trial due to the trial court's admission of the testimony of three (3) "outcry" witnesses.[2] Petition at 6-7. Respondent filed his response on January 14, 2010. [Docket Entry No. 12] ("Resp.").[3]

---

[2]  Under New York law, witness testimony of a "prompt outcry" by an alleged victim is admissible to corroborate an allegation of sexual assault. People v. McDaniel, 595 N.Y.S.2d 364, 367-68 (1993).

[3]  On November 16, 2009 and December 4, 2009, petitioner moved to (1) "stay the petition for writ of habeas corpus . . . until a post conviction motion pursuant to CPL 440.10 and a writ of coram nobis are exhausted in the state courts," and (2) "amend the pending habeas corpus petition with the claims that will be raised" in those proceedings. [Docket Entry No. 3] at 1. The Court

3

II. Standard for Habeas Corpus Review

Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). Claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under AEDPA. See Cone v. Bell, 556 U.S. 449, 472 (2009) (citing 28 U.S.C. § 2254(d)). Where AEDPA's deferential standard of review does apply, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." Bierenbaum v. Graham, 607 F.3d 36, 48 (2d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, see 28 U.S.C. § 2254(a), and "does not lie for errors of state law." Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (internal quotation marks omitted). An unreasonable application of established federal law occurs "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Alternatively, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

---

denied petitioner's motion, holding that amendment of the petition to include petitioner's asserted claims for ineffective assistance of appellate counsel and prosecutorial misconduct would be futile, as the claims are time-barred under the AEDPA.

4

decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413.

The Supreme Court has stated that "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (internal quotation marks omitted). A state court's unreasonable application of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." Sellan, 261 F.3d at 315 (quotations and citation omitted); see also Sorto v. Herbert, 497 F.3d 163, 169 (2d Cir. 2007) ("[I]t is well-established in this Circuit that the 'objectively unreasonable' standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.") (internal quotation marks omitted).

III. Analysis

    A. Speedy Trial

Under CPL § 30.30, the prosecution was required to have been ready for trial within six (6) months of the commencement of the criminal action against petitioner. According to petitioner, "the prosecution . . . w[as] chargeable with 254 days, from August 12, 2003 to April 22, 2004[,] . . . [and] failed to sustain its burden that it is not chargeable with the extensive period of delay between the commencement of the action and the petitioner's trial." Petition at 6. Although petitioner's argument relates to CPL § 30.30, he characterizes his claim as one for the violation of his constitutional right to a speedy trial. Respondent asserts that any constitutional speedy trial claim must be dismissed as procedurally defaulted due to petitioner's failure to raise the claim on

direct appeal of his conviction to the Appellate Division. Resp. at 3-4.

The Court may not grant a petition for habeas corpus unless "the applicant has exhausted the remedies available in the courts of the [s]tate," or "there is an absence of available [s]tate corrective process." 28 U.S.C. § 2254(b)(1)(A), (B)(i). "[E]xhaustion of state remedies requires that [a] petitioner fairly present federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (internal quotation marks omitted). Although a defendant may "fairly present the substance of a federal constitutional claim to the state court without citing 'book and verse on the federal constitution,'" "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 192 (2d Cir. 1982) (quoting Picard v. Connor, 404 U.S. 270, 278 (1971)); see also Clark v. Bradt, No. 10-CV-0964, 2012 WL 28275, at *4 (W.D.N.Y. Jan. 5, 2012) ("A petitioner may exhaust a habeas claim by directly citing to the Constitution, or by (a) relying on pertinent federal cases employing constitutional analysis; (b) relying on state cases employing constitutional analysis in like fact situations; (c) asserting the claim in terms so particular as to call to mind a specific right protected by the Constitution; or (d) alleging a pattern of facts that is well within the mainstream of constitutional litigation.") (citing Daye, 696 F.2d at 190).

On April 23, 2004, petitioner moved the trial court "to dismiss the indictment pursuant to CPL § 30.30." Appellant's Brief to Appellate Division ("App. Brief.") at 13, People v. Newborn, No. 2004-9456 (N.Y. App. Div. 2007). At a hearing on April 26, 2004, the trial judge denied petitioner's motion to dismiss the indictment, stating that "it would appear from the record here that the adjournments that were made in this case, all the adjournments were either at the request of [petitioner] or with his consent," and that the prosecution was "not dilatory" in seeking to have

6

petitioner produced for court appearances from his place of incarceration. Transcript of Hearing at 2:03-3:04, People v. Newborn, No. 1970-03 (Cnty. Ct. Apr. 26, 2004).[4] On appeal to the Appellate Division, petitioner argued that "[t]he trial court erred by failing to dismiss the indictment because the prosecution denied the appellant the right to a speedy trial pursuant to Criminal Procedure Law § 30.30." App. Brief at 13.

Petitioner did not fairly present his constitutional speedy trial claim in state court. A motion to dismiss an indictment pursuant to CPL § 30.30 does not fairly present a constitutional speedy trial claim unless the defendant made the state court aware that he was also raising a claim based upon federal law. See, e.g., Woodard v. Berry, No. 90-CV-1053, 1992 WL 106508, at *2 (E.D.N.Y. Apr. 24, 1992) ("[W]hen the petitioner twice raised his statutory 'speedy trial' claim in the state courts under Section 30.30, he did not effectively present to those courts the federal constitutional speedy trial claim that he raises now in this court."). In petitioner's appellate brief, petitioner characterized the issue on appeal as "[w]hether the trial court erred by failing to dismiss the indictment because the prosecution denied the appellant of the right of [sic] a speedy trial pursuant to CPL § 30.30 where the prosecution failed to demonstrate that it was ready for trial within the six (6) months from the commencement of the criminal" case. App. Brief at 1. Petitioner's brief did not refer to his constitutional right to a speedy trial and did not cite to a single federal case. Instead, petitioner's brief focused exclusively on CPL § 30.30 and the amount of delay that the prosecution was chargeable with under that statute, arguing that "the period of delay resulting from detention of the defendant in another jurisdiction" was improperly excluded from the time chargeable to the prosecution because the prosecution failed to show that it made "diligent

---

4   "[T]he period of delay resulting from a continuance granted by the court at the request of, or with the consent of, the defendant or his counsel" is excluded from the time within which the prosecution must be ready for trial. CPL at § 30.30(4)(b).

7

and . . . reasonable efforts to obtain the defendant for trial." App. Brief at 15-16 (citing CPL § 30.30(4)(e)). Because petitioner failed to indicate to the state courts that he was seeking relief on constitutional grounds, he has failed to exhaust the claim. See, e.g., Hodges v. Bezio, No. 09-CV-3402, 2012 WL 607659, at *4 (E.D.N.Y. Feb. 24, 2012) ("Since [petitioner's] § 30.30 claim, as denominated, does not present a federal ground for relief, it follows that any attempts to vindicate that claim in state court did not fairly present a federal constitutional issue to those courts."); Robinson v. Superintendent, Green Haven Corr. Facility, No. 09-CV-1904, 2012 WL 123263, at *3 (E.D.N.Y. Jan. 17, 2012) (holding that petitioner failed to exhaust his constitutional speedy trial claim where "[i]n his state court appellate brief, petitioner relied solely on state cases discussing the statutory speedy trial requirements under [CPL] § 30.30 and only presented facts regarding chargeable time against the prosecution under state law[,] . . . [and] did not cite any federal cases or state cases employing constitutional speedy trial analysis").

"[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir.2001) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). New York law permits a defendant to collaterally attack a judgment of conviction obtained in violation of his constitutional rights, CPL § 440.10(1)(h), but requires that any such motion be denied where the defendant unjustifiably failed to raise the constitutional violation on direct appeal, despite the availability of a sufficient record, CPL § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised

upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.").

The length and cause of the delays in petitioner's criminal action (the basis for any constitutional speedy trial claim) were clear from the record when petitioner appealed his conviction, and therefore his failure to raise a constitutional speedy trial claim on direct appeal was unjustified. Under New York law, petitioner is no longer able to raise the claim in state court, and the claim is accordingly deemed procedurally defaulted. See, e.g., Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000) ("New York permits only one application for direct review, and having failed to raise the claim on direct appeal [the petitioner] may not seek collateral relief in New York courts. Because [the petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.") (citations omitted); Dowtin v. Cohen, 179 F. App'x 737, 739 (2d Cir. 2006) ("State-court remedies for this claimed violation are no longer available because [the petitioner] has already taken his one direct appeal and this claim is procedurally barred from consideration on a collateral attack on his conviction. [The petitioner's] claim is therefore procedurally defaulted . . . .") (citations omitted).

"[P]rocedural default in state court will bar federal habeas review unless the petitioner can either: (1) show cause for the default and actual prejudice as a result of the constitutional violation, or (2) demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice, or, in other words, an unjust incarceration." Spence, 291 F.3d at 170 (internal quotation marks and citation omitted) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986) ("[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a [writ of habeas] may [be] grant[ed] even in the

9

absence of a showing of cause for the procedural default.")). Petitioner has failed to offer any cause for the default and has not shown that he was prejudiced as a result of the alleged speedy trial violation or that a failure to consider his claim will result in an unjust incarceration. Therefore, the constitutional speedy trial claim is barred from habeas review by the Court.

B.   Outcry Witnesses

Under New York law, "'evidence that a victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place.'" People v. Rosario, 17 N.Y.3d 501, 511 (2011) (quoting People v. McDaniel, 81 N.Y.2d 10, 16 (1993) ("The contemporary rationale for permitting prompt outcry evidence is that some jurors would inevitably doubt the veracity of a victim who failed to promptly complain of a sexual assault, such conduct being 'natural' for an 'outraged female.'")). "The prompt outcry rule—an exception to the inadmissibility of the prior consistent statements of an unimpeached witness—permits evidence that a timely complaint was made, but does not allow further testimony as to the details of the incident." Id. (internal quotation marks omitted). "A complaint is timely for purposes of the prompt outcry exception if made 'at the first suitable opportunity.'" McDaniel, 81 N.Y.2d at 17.

The prosecution elicited the testimony of three (3) witnesses to show that N.G. promptly complained of the sexual assault. Raphael Guardado testified that on December 6, 2001, while he was at work at a construction site in Huntington, a "short, robust" woman who "was nervous and crying" approached him for help, telling him "that a man tried to force her, tried to abuse her." T. 167-69. Andrew Cassalini, Mr. Guardado's supervisor at the site, testified that a "short and stocky" woman with "[d]ark hair" who was "crying and shaking" and "visibly upset" approached and spoke in Spanish to one of Mr. Cassalini's workers. T. 157-58. Jeanette Deleon, N.G.'s manager, testified that when N.G. arrived at work on December 6, 2011 she was "nervous" and

10

"crying." T. 129-30. When Ms. Deleon asked N.G. what was wrong, she said "she was sexually assaulted" and that "[s]omebody dragged her in a car." T. 132-33. Petitioner objected to Ms. Deleon's testimony as hearsay. After a brief voir dire during which the trial judge confirmed that N.G.'s conversation with Ms. Deleon occurred on the day of the incident before N.G. went to the hospital, the trial judge overruled petitioner's objection. T. 131.

On appeal, the Appellate Division did not specifically discuss petitioner's claim that the admission of the outcry witnesses' testimony was improper, but held that all of petitioner's "remaining contentions [were] without merit or d[id] not require reversal." This is a merits determination to which AEDPA deference is given. See Ryan v. Miller, 303 F.3d 231, 246 (2d Cir. 2002) ("A state court need not analyze each individual claim or cite federal law in order to adjudicate a claim, so long as it states it is disposing of the claim on the merits, and it issues a judgment.").

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-78 (1991). However, "[a] federal habeas court may, of course, review an error of state evidentiary law to assess whether the error deprived the petitioner of his due process right to a 'fundamentally fair trial.'" Freeman v. Kadien, 684 F.3d 30, 35 (2d Cir. 2012) (quoting Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004)).

Petitioner has failed to show that the trial court's admission of the outcry testimony violated New York state evidentiary law. N.G. spoke with each of the outcry witnesses promptly after the assault, and the witnesses' testimony was restricted at trial to the fact of N.G.'s complaint and did not include any impermissible details of the assault. See McDaniel, 81 N.Y.2d at 18 (holding that testimony that victim "reported being bothered, attacked, molested [] did not exceed

the allowable level of detail"); cf., e.g., People v. Rice, 75 N.Y.2d 929, 932 (1990) (holding that testimony of the complainant's description of her attacker was beyond the scope of the prompt outcry exception).[5]

Petitioner also fails to show that admission of the testimony was contrary to clearly established federal law. Even if the trial court erred in admitting the testimony under New York state law, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983). "'The introduction of [improper] evidence against a defendant . . . does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Vega v. Portuondo, 120 F. App'x 380, 382 (2d Cir. 2005) (quoting Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998)). To rise to such a level, the erroneously admitted evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 73 (2d Cir. 2011) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)).

The outcry witnesses' testimony was not sufficiently important to petitioner's conviction that its erroneous admission would constitute a deprivation of due process. The outcry witnesses merely corroborated N.G.'s testimony that she immediately complained about the assault, and the testimony did not include an identification of petitioner or any other impermissible details. Both N.G. and petitioner testified at trial, and there is no reason to conclude that the outcry witnesses'

---

[5] To the extent that petitioner is challenging the absence of a specific limiting instruction regarding the permissible use of the outcry evidence, the error was harmless in light of the fact that the outcry witnesses' testimony at trial did not exceed its permissible scope. See People v. Pruitt, 951 N.Y.S.2d 515, 516 (App. Div. 2012) ("The absence of limiting instructions regarding the prompt outcry evidence . . . was . . . harmless.").

testimony played any substantial role in the jury's assessment of the credibility of N.G. and petitioner. Therefore, even if erroneously admitted, the outcry witnesses' testimony was harmless. See People v. Curran, --- N.Y.S.2d ---, 2013 WL 387979, at *1 (N.Y. App. Div. Feb. 1, 2013) (holding that erroneous admission of prompt outcry testimony was harmless where "[t]he proof of defendant's guilt [was] overwhelming, and there [was] no significant probability that the jury would have acquitted defendant were it not for the error"); Rosario, 17 N.Y.3d at 515 (holding that erroneous admission of outcry testimony was harmless where the complainant "had no motive to implicate [the] defendant[,] [a]nd while [the defendant] repeatedly describe[d] [the] complainant's testimony as 'vague and inconsistent,' [the] defendant never point[ed] out any specific inconsistencies"); Rice, 75 N.Y.2d at 932 (holding that erroneous admission of prompt outcry testimony regarding victim's identification of attacker was harmless error where "[t]he complainant's identification of defendant was strong, and consistent with her trial testimony concerning the rapist's appearance").

Moreover, to the extent that petitioner is raising an argument under the Sixth Amendment, the outcry testimony does not implicate the Confrontation Clause. N.G. testified at trial, affording petitioner an opportunity to cross-examine her about her statements, see, e.g., Grant v. Bradt, No. 10-CV-0394, 2011 WL 8897634, at *11(S.D.N.Y. July 8, 2011) ("[W]here the hearsay declarant testifies at trial and is subject to cross-examination, 'the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements.") (quoting United States v. Owens, 484 U.S. 554, 560 (1988)), and her statements to the outcry witnesses were not "testimonial," see Crawford v. Washington, 541 U.S. 36, 68 (2004) (holding that out-of-court "testimonial" statements are inadmissible unless the declarant was unavailable for trial and the defendant had a prior opportunity to cross-examine the

declarant); Massey v. New York, No. 10-CV-0857, 2011 WL 6180452, at *8 (W.D.N.Y. Dec. 13, 2011) (holding that victim's statement moments after he was stabbed identifying his attacker "to an acquaintance at a bar with no intervention of the police or other type of governmental authorities" was "plainly nontestimonial"); cf. Davis v. Washington, 547 U.S. 813, 822 (2006) ("[Statements] are testimonial when the circumstances indicate that there is no [] ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.").

Since petitioner has failed to show that the admission of the testimony was contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented at trial, habeas relief is not warranted.

III. Conclusion

For the foregoing reasons, the Petition is denied. As petitioner has failed to make a substantial showing of a violation of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(1). In accordance with Federal Rule of Civil Procedure 77, the Clerk of Court shall serve a copy of this order upon all parties, including petitioner at his last known address.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: February 7, 2013
Central Islip, New York

14